After a trial by jury, the petitioner, Wendall Hasan, was found guilty of felony murder, Connecticut General Statutes Sec. 53a-54c; and burglary in the first degree, Connecticut General Statutes Sec. 53a-101 (a)(2). At trial, the petitioner was represented by a Public Defender. After briefing and oral argument, the Connecticut Supreme Court affirmed that conviction. State v. Hasan, 205 Conn. 485
(1987). On appeal the petitioner was represented by a Special Public Defender.
On August 1, 1986 the petitioner filed a pro se petition CT Page 1620 for writ of habeas corpus, alleging ineffective assistance of trial counsel. That writ, as amended on March 6, 1990, is the subject of the instant action.
II. STATEMENT OF THE FACTS UNDERLYING PETITIONER'S CONVICTION
The following is taken from the opinion of the Connecticut Supreme Court in State v. Hasan, 205 Conn. 485
(1987):[1]
 The jury could reasonably have found the following facts. On July 2, 1985, the police were called to the home of George and Rachel Tyler to investigate a possible homicide. The police found George Tyler dead in the kitchen, Rachel Tyler injured, and the premises apparently ransacked. The Tylers' son and daughter-in-law determined that George Tyler's wallet was missing as was some of Rachel Tyler's jewelry. Among the evidence secured by the police were broken glass and linoleum bearing a bloody footprint made by a sneaker. Police suspicion turned to the defendant when, on July 5, 1985, a plumber repairing a clogged toilet in a South Norwalk apartment found two credit cards belonging to George Tyler to be the cause of the clog. The plumber turned the cards over to the owner of the apartment, who reported the find to the police. The police obtained a warrant to search the apartment.
 The defendant had been living at the South Norwalk apartment intermittently; it was also occupied by his mother, stepfather, his brother, James Singleton, two sisters and James' girlfriend. Pursuant to the warrant, the police seized several pairs of shoes including a pair of size ten (10) Puma low cut sneakers which they found at the foot of the bed in which James and his girlfriend slept. The bedroom was actually the defendant's and most of the belongings were his. James told the police that the sneakers were the defendant's and that his own shoe size was thirteen (13). During custodial interrogation, the defendant stated that the apartment was his primary residence and that he owned a pair of Puma sneakers like the ones seized.
 The conviction depended in large measure on circumstantial evidence. Glass shards and linoleum fibers found in the sole of one of the sneakers were similar to the mass produced glass and CT Page 1621 linoleum located at the crime scene, but could not be positively identified as having come from there. Similarly, human blood detected on the sneakers was consistent with the victims' blood, but could not be positively identified as theirs. During trial, a forensics expert from the Connecticut State Police Forensics Laboratory identified the Puma sneakers as those that made the footprints on the Tylers' kitchen floor. James testified that the defendant had been in and out of the apartment between July 1 and July 3, 1985, and that he had concluded that the sneakers belonged to the defendant because they were in his room under his bed. A former cellmate of the defendant testified that the defendant had admitted having taken part in the crime.
 In addition to the foregoing, the jury heard the testimony of Dr. Robert Rinaldi, a podiatrist called by the state as an expert witness, who concluded "within reasonable podiatric certainty" that based upon his examination of the sneakers and the defendant's feet, the sneakers belonged to the defendant. The defendant excepted to the admission of this testimony and appeals on this grounds.
Writ of habeas corpus is available to those persons whom society has grievously wronged. Kuhlman v. Wilord,477 U.S. 436, 106 S.Ct. 2616 (1986). The writ is not intended to assure a trial free of constitutional error. Fundamental fairness is the crucial concern of the writ of habeas corpus. Strickland v. Washington, 466 U.S. 668, 698 (1984).
This Court "must indulge in a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under these circumstances, the challenged action `might be considered sound trial strategy.'" Levine v. Manson, 195 Conn. 636, 640 (1985).
There must be proof that "there exists `a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different." Levine v. Manson, supra at 640 and a showing of prejudice is required, Strickland v. Washington, supra.
Petitioner has not shown what benefit would have occurred had he procured a continuance. Failure to seek a continuance is hardly "per se" ineffectiveness, it is petitioner's burden to show not speculate what the CT Page 1622 continuance would have produced.
Comments to the jury by opposing counsel do not constitute error unless they are both prejudicial and deprive the defendant of a fair trial.
Neither trial or appellate counsel were concerned with the state's attorney's argument and both were satisfied with the trial judge's charge in its totality.
The trial counsel was in the best position to evaluate the impact of the State's argument. It was a strategic move and a strenuous objection would have given it more significance than ignoring it.
This Court was more than satisfied with trial counsel and the way he evaluated and examined the experts. Trial counsel had extensive criminal trial background and formed a reasonable strategy. He had ample time to review and discuss the evidence with the experts. He does not believe in the shotgun approach to defense. Petitioner's criticism is with the benefit of hindsight. That test is not to be applied to trial counsel.
Trial counsel truly and reasonably felt he had discredited the testimony of petitioner's cellmate on the confession or admission. Unfortunately the jury believed him and the shoe expert. The petitioner was unable to show by a preponderance of the evidence that any shortcomings of either trial or appellate counsel effected the outcome.
That also applies to a failure to not request a unanimity charge.
The petition for a writ of habeas corpus is denied and no other relief is warranted.
DUNN, J.